**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Roy Spears, | ) | |
| Plaintiff, | ) | |
| | ) | No. CIV 14-2352-TUC-CKJ |
| vs. | ) | |
| | ) | ORDER |
| City of Tucson, Arizona; Roberto Villaseñor, in his official capacity as Chief of Police for City of Tucson; C. Burnett, individually and in his official capacity as police officer for City of Tucson Police Department, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 6). Plaintiff seeks declaratory relief and nominal damages. Defendants have filed a Response (Doc. 31) and Plaintiff has filed a Reply (Doc. 33). Also pending is Defendants' Motion to Dismiss Case as Moot or Motion for Summary Judgment (Doc. 29). Plaintiff has filed a Response (Doc. 35) and Defendants have filed a Reply (Doc. 37). The parties presented oral argument to the Court on May 18, 2015.

I.  *Factual Background*

Roy Spears ("Spears") is the named Plaintiff in this case. Spears claims Defendants' policy of enforcing trespass law when a property is stated to be private without obtaining more information violated his constitutional right to free speech. (Compl. ¶ 67). Spears seeks injunctive and declaratory relief, as well as nominal damages.

Tucson Medical Center ("TMC") owns the commercial subdivision commonly

referred to as Tucson Medical Park, Block 2 ("Park"). The Park houses offices of various medical providers. (Compl. ¶ 5). The City of Tucson, Arizona ("City"), Roberto Villaseñor ("Villaseñor"), and C. Burnett ("Burnett") (collectively "Defendants") assert the recorded 1968 Plat of the Tucson Medical Park shows the entire Park as private property, depicts no internal roadways, and makes no mention of North Wyatt Drive or East Farness Drive. In addition, Defendants suggest three other plats (Book 27, p. 48; Book 29, p. 51; Book 38, p. 68) describe Wyatt Dr. and other interior streets appearing on the plat as private streets. (Defendant's Reply to Plaintiff's Reply Statement of Undisputed Facts Regarding Plats, "Def. Reply S.O.F.", Doc. 38, p. 3; Ex. P4-P6). The original 1968 Plat is recorded at Book 18, Page 49, Pima County Recorder's Office. (Def. Reply S.O.F., pg. 3; Ex. P1)   An unnamed drainage way and an easement for the use of the public along a different street (Seneca Street) was dedicated by TMC in the dedication section of the 1968 Plat. *Id.*

Spears asserts the commercial subdivision is better represented by a different annotated plat, the Complaint alleges the plat is recorded at Book 19, page 43, by the Pima County Recorder. (Compl. ¶ 24; Plaintiff's Motion for Prelim. Injunction "Pl. M.P.Inj.", Doc. 6, Ex. D). This plat shows Wyatt Dr., Farness Dr. and easements. (Pl. M.P.Inj., Ex. D). The annotated plat indicates it is not the official plat, that it is furnished for reference only and does not constitute a survey. *Id.*

A Roadway Use Permit, executed on October 18, 1977,  and recorded at Book 5633, Page 0858, granted the non-exclusive right to use the roadways of Wyatt Dr. and Knight Dr. to TMC employees, invitees, and the public at large. (Compl. ¶ 30).  The permit grants this right as set forth in exhibits attached to the Roadway Use Permit. *Id.*   The permit and attached exhibits describe these areas in surveyor's terms; it does not include a map or make reference to the existing 1968 plat. (Pl. M.P.Inj., Ex. H) Defendants assert the Roadway Permit is not mentioned in any of the recorded plats. (Def. Reply S.O.F., p. 3).  Plaintiff asserts that this document granted a public entitlement as public thoroughfares to Wyatt Dr. and Farness Dr. (Compl. ¶  31).

The building on Parcel No. 631 of the Park, commonly known as 2255 North Wyatt

1   Dr., is leased to Planned Parenthood of Southern Arizona, Inc. (Compl. ¶ 26). The Sanger

2   Center operates this location. *Id.*

3       On September 16, 2013, Spears and others went to the sidewalk at the intersection of

4   Wyatt Dr. and Farness Dr., approximately 75 feet from the Sanger Clinic. (Compl. ¶ 43-44).

5   Spears alleges he was there to share his views on abortion with his intended audience.

6   (Compl. ¶ 44). Spears and the other persons were approached by a security guard who

7   characterized the sidewalk as private property, off-limits to the general public, and asked

8   Spears and the others to leave the area and move to an alternate location. (Compl. ¶ 46).

9   Spears asserts they were asked to leave because of their message regarding abortion. (Compl.

10  ¶ 47).

11      Spears asserts he declined to leave because he was standing on what appeared to be

12  a public sidewalk. (Compl. ¶ 48). Tucson Police Department ("TPD") Officer Burnett was

13  dispatched to Wyatt Dr. at the request of a TMC security supervisor, Kevin Loeffler, who

14  sought to have Spears and other protesters on Wyatt Dr. removed from the sidewalk.

15  Defendant's Statement of Undisputed Facts in Support of Defendant's Motion for Summary

16  Judgment "Def. S.O.F.", Doc. 30-1, p. 4-5). Loeffler stated to Burnett the sidewalks and

17  streets were private property and were not publicly maintained. *Id.* at 5.  Burnett requested

18  TMC produce documentation to establish that the sidewalk along Wyatt Dr. was indeed

19  private property. *Id.* TMC's Director of Security, Bill Fleming, provided records from the

20  Pima County Assessor's Office depicting all streets within the TMC Medical Park as

21  privately owned by TMC. *Id.*

22      Burnett also contacted his supervisor, TPD Lieutenant Reese. *Id.* Defendants assert

23  Reese confirmed with the City's Streets and Transportation Department that the streets and

24  sidewalks within the Medical Park, including Wyatt Dr., were private property. *Id.* at 4.

25  Spears asserts, however, that it was only confirmed that the streets were owned by TMC.

26  Burnett then advised Spears and those gathered with him on Wyatt Dr. that they were

27  trespassing on private property. (Compl. ¶ 51-52). Spears contends he explained to Burnett

28  that the sidewalk was public domain and that he had a right to speak on that sidewalk.

(Compl. ¶ 51). Spears further states that Burnett advised the group they would be arrested for criminal trespass if they did not leave and that they could not return to that sidewalk to conduct expressive activities again. (Compl. ¶ 51, 52). Spears and the other persons with him agreed to leave and Spears did not return to the sidewalk near the Sanger Center for fear of arrest. (Compl. ¶ 62).

Spears proposes that not only does the City retain easements on the TMC property, but that the roads were designed as thoroughfares connecting seamlessly to the transportation grid. (Compl. ¶ 42). Spears alleges there are no signs, gates, or any other markers identifying Wyatt Dr., Farness Dr. or the public sidewalks within the Medical Park as anything other than public thoroughfares. (Compl. ¶ 35).

In an October 10, 2013 letter to Villaseñor and the Tucson City Attorney's Office, Spears, through counsel, demanded that the City allow Spears the freedom to speak and display signs about abortion on Wyatt Dr.. (Pl. M.Pl.Inj., Ex. Q). The letter alleged TPD's actions, requiring Spears vacate his post on Wyatt Dr., on September 13, 2013 violated his First Amendment rights. *Id.* Spears indicated in the October 2013 letter that the Wyatt Dr. sidewalk is a public forum and contested the City's purported policy of banning his speech there. *Id.*

Defendants declare TPD's actions were based on the only information available to them at the time. This information included supported evidence that Wyatt Dr. was privately owned, which resulted in TPD acting on the City's longstanding policy of enforcing state trespass laws where a trespass claim is reasonably substantiated. (Declaration of Roberto Villaseñor, Doc. 30-2, ¶ 6). Villaseñor clarified the City's trespass policy, "[W]hen activity is occurring on private property, TPD officers are expected to make a reasonable, independent determination based upon reasonably available information. However, an officer responding to a property owner's trespass claim cannot and should not be expected to conduct a title search or other legal or record research to explore and resolve any possible conflicting property rights claims." *Id.* at ¶ 7. "The City and TPD have no specific policy or custom specific to private property rights in North Wyatt Dr. and East Farness Dr." *Id.*

1    On October 15, 2013, the City responded to Spears' October 2013 letter reasserting

2    the private nature of the property on Wyatt. (Compl. ¶¶ 56-57). The letter explains that since

3    1968, the sidewalk within the medical complex was been preserved as private. (Pl. M.Pl.Inj,

4    Ex. R). The letter states Wyatt Dr. is used for internal circulation only and was never

5    intended nor used as a public thoroughfare. *Id.*

6    One year later, on September 12, 2014, Spears filed a Complaint against Defendants:

7    the City; Villaseñor, in his official capacity as Chief of Police for the City of Tucson; and

8    Burnett, individually and in his official capacity as a TPD police officer. Spears seeks

9    injunctive and declaratory relief and nominal damages.

10    After the initiation of Spears' action, TMC commissioned a survey to determine the

11    scope of the easement described in the Roadway Use Permit. In a letter dated December 5,

12    2014, TMC advised the City that TMC had dedicated Wyatt Dr., Farness Dr., and Knight Dr.

13    for public use in its 1977 Roadway Use Permit, and that the survey showed the geographic

14    scope of this easement encompassed the Wyatt Dr. sidewalk, including the portion of the

15    sidewalk in front of Planned Parenthood. (Plaintiff's Notice of Filing Exhibit "Pl. Notice",

16    Doc. 24, Ex. S; Def. S.O.F., Ex. 9). TMC further stated that it now considers the sidewalk

17    to have the same status of any public sidewalk, it has withdrawn any objection to Spears'

18    protected speech within the public right of way, and it will not seek Spears' removal from

19    the sidewalk at issue to the extent he is engaged in protected speech activities. (Def. S.O.F.,

20    Ex. 9).

21    Defendants claim the City has now concluded that TPD must treat Wyatt Dr. and

22    Farness Dr. as any other public street and the sidewalk running along these roadways as any

23    other public sidewalk. (Declaration of Roberto Villaseñor, Doc. 30-2, ¶ 8). As a public street,

24    members of the public, including Spears, may exercise their First Amendment rights on these

25    sidewalks to the same extent permitted by law on any other public sidewalk in the city. *Id.*

26    Spears may engage in protected speech activities without fear of interference, removal, or

27    arrest by TPD. *Id.*  Defendants also assert TPD will not seek the removal or arrest of

28    individuals who are engaged in protected speech activities on the relevant roadways without

a court order requiring removal or arrest, and that this stance will not change regardless of any subsequent change of position by TMC. *Id.*

Spears believes the December 5, 2014 letter from Defendants' counsel does not state that Defendants concur with TMC's assessment and indicates the City will continue to enforce trespass laws if TMC requests the City to do so. (Plaintiff's Reply in Support of Preliminary Injunction "Pl. Reply Prelim. Inj.", Doc. 33, pg. 7).

Spears alleges it is not Arizona's trespass law which is unconstitutional, but the application of the law through the City's policy of enforcing privacy rights based merely on a determination of private property alone without considering whether the private property is a traditional public forum or whether there are public easements which would protect First Amendment speech. (Pl. Reply Prelim. Inj, p. 9). Spears alleges that the sidewalks in the Park have historically and consistently maintained the character of a public forum, and officers should have acknowledged the public forum and allowed Spears to protest on Wyatt Drive. *Id.*

## II. *Request for Injunctive and Declaratory Relief*

Where a plaintiff seeks injunctive and declaratory relief and the matter becomes moot during the pendency of litigation, there is no case or controversy for the court to adjudicate and the court lacks subject matter jurisdiction to award legal relief. *Smith v. Washington Law School*, 233 F.3d 1188, 1194 (9th Cir. 2000). The Ninth Circuit has stated:

> We have not set forth a definitive test for determining whether a voluntary cessation of this last type–one not reflected in statutory changes or even in changes in ordinances or regulations–has rendered a case moot. But we have indicated that mootness is more likely if (1) the policy change is evidenced by language that is 'broad in scope and unequivocal in tone,'(*White v. Lee*, 227 F.3d 1214, 1243 (9th Cir.2000)); (2) the policy change fully "addresses all of the objectionable measures that [the Government] officials took against the plaintiffs in th[e] case," *id.*; (3) 'th[e] case [in question] was the catalyst for the agency's adoption of the new policy," *id.*; (4) the policy has been in place for a long time when we consider mootness, *see id.* at 1243-44, nn. 26, 27; and (5) "since the policy's] implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff[]," *id.* at 1243.

*Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014). (The VA's action did not affect a

1  policy change, because the underlying regulation has been in force for decades and the

2  validity was not at issue. Rather the email amounted to a clarification of VA's existing policy

3  and was "more aptly described as reemphasizing, or recommitting to an existing policy.".

4  Where cessation of conduct from which a claim arose is voluntary, mootness will exist where

5  the record shows "(1) it can be said with assurance that 'there is no reasonable expectation

6  . . .' that the alleged violation will recur, and (2) interim relief or events have completely and

7  irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*,

8  440 U.S. 625, 631 (1979).

9      As a result of the survey conducted by TMC, the City has changed its position and

10  declared the streets and sidewalks of Wyatt Dr. and Farness Dr. are public. Defendants have

11  admitted Spears is permitted to practice free speech in this area as on any other public

12  sidewalk. Defendants have stated the change irrevocable and independent of any subsequent

13  change in position by TMC. Spears' request for declaratory relief, to be permitted to practice

14  free speech on the sidewalk along Wyatt and Farness, has occurred. This was not a change

15  in the City's trespass policy, but is rather a clarification of how the current trespass policy

16  will apply to the sidewalks and streets on Farness and Wyatt Drives. It is clear that the parties

17  agree the Roadway Use Permit provides public access to the relevant sidewalks. Under

18  Arizona law, there has been a common law dedication of the roadway and sidewalk easement

19  that is irrevocable. Although the cessation of conduct by both TMC and Defendants is

20  voluntary, the alleged violation is not likely to recur, and the Defendants' assertion that these

21  areas are public has irrevocably eradicated any adverse effect of an alleged violation to

22  Spears. He may return to the area to peacefully protest without fearing arrest. The Court

23  cannot grant Spears any meaningful relief, lacks subject matter jurisdiction, and this action

24  is moot. The Court will dismiss Spears' declaratory and injunctive claims.

25

26  III.   *Standard of Review*

27      In order to prevail on a §1983 claim against a defendant by alleging liability based on

28  official policy, practice, or custom, a plaintiff must prove each of the following elements by

1   a preponderance of the evidence: (1) defendant acted under color of law; (2) the act of a

2   defendant deprived the plaintiff of his particular rights under the United States Constitution;

3   and (3) defendant acted pursuant to an expressly adopted official policy or a longstanding

4   practice or custom of the defendant. Ninth Cir. Model Civil Jury Instructions 9.4;  *see Hart*

5   *v. Parks*, 450 F.3d 1059, 1071 (9th. Cir. 2006)*; see also Monell v. Dep't of Social Serv.s of*

6   *City of Nevada*, 436 U.S. 658, 689 (1978) (Governing bodies can be sued where the action

7   alleged to be unconstitutional enforces an official policy or custom which causes the injury.).

8

9   IV.   *Qualified Immunity for C. Burnett*

10        Based on the facts available to Burnett at the time of the incident, Spears fails to show

11  by a preponderance of the evidence that his constitutional right to remain on the sidewalk

12  was clearly established. Because the constitutional right was not clearly established,

13  Burnett's removal of Spears was objectively reasonable and covered by qualified immunity.

14        Qualified immunity balances the interests of "the need to hold public officials

15  accountable when they exercise power irresponsibly and the need to shield officials from

16  harassment, distraction, and liability when they perform their duties reasonably." *Pearson*

17  *v. Callahan*, 555 U.S. 223, 231 (2009). When qualified immunity is asserted at the summary

18  judgment stage, the court may consider (1) whether a constitutional right has been violated

19  by the defendant, and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S.

20  194, 201 (2001). A right is clearly established when it "would be clear to a reasonable officer

21  that [his] conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201-202.

22  District courts may "exercise their sound discretion in deciding which of the two prongs of

23  the qualified immunity analysis should be addressed first in light of the circumstances in the

24  particular case at hand." *Pearson*, 555 U.S. at 236; *see Ramirez v. City of Buena Park*, 560

25  F.3d 1012, 1020 (9th Cir. 2009). Government officials are entitled to qualified immunity

26  "insofar as their conduct does not violate clearly established statutory or constitutional rights

27  of which a reasonable person would have known." *Liston v. County of Riverside*, 120 F.3d

28  965, 975 (9th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Watkins*

*v. City of Oakland*, 145 F.3d 1087, 1092 (9th Cir. 1998). The Court must determine "whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." *Watkins*, 145 F.3d at 1092. The defense of qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the law . . . [I]f officers of reasonable competence could disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Despite his insistence the sidewalk was public, Spears did not have a clearly established constitutional right to free speech on the sidewalk of Wyatt Dr. because all available information indicated the sidewalk was private property. First, Burnett was told by Security Supervisor Kevin Loeffler the area was private. In addition, Burnett requested and was provided further official documentation by Director of Security, Bill Fleming, depicting all streets within the TMC Medical Park as owned by TMC. Moreover, Burnett reasonably relied upon TPD Lieutenant Reese's confirmation by City's Streets and Transportation Department that the land was private. The subsequent information revealing the sidewalks were public was not available to Burnett at the time he removed Spears from the property. Considering the totality of the circumstances, a reasonable officer would not have suspected that enforcing trespass law at the request of the property owner could be a constitutional violation. Officer Burnett reasonably concluded that the area was private and removed Spears. Burnett acted reasonably and did not knowingly violate the law by removing Spears. Burnett's verification of the nature of the property and subsequent removal of Spears was in accordance with TPD policy and was far from incompetent. In fact, Burnett's confirmation of the nature of the property went above and beyond TPD's trespass policy, which requires only that the officer "make a reasonable, independent determination based upon reasonably available information."

Since Spears constitutional right to free speech was not clearly established, and Burnett's removal of Spears was reasonable and competent, Burnett is relieved of liability through qualified immunity.

1    V.  *Defendants' Liability for Constitutional Violation*

2           Four conditions must occur in order to establish municipal liability for failing to act

3    to preserve constitutional rights: (1) "[the plaintiff] was deprived of a constitutional right; (2)

4    [the municipality] had a policy, (3) the policy amounted to deliberate indifference to [the

5    plaintiff's] constitutional right, and (4) the policy was the 'moving force behind the

6    constitutional violation.'" *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs*., 237 F.3d

7    1101, 1110-11 (9th Cir. 2001) (*quoting Van Ort v. Estate of Stanewich*, 92 F.2d 831, 835 (9th

8    Cir. 1996)); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *City of Canton, Ohio v.*

9    *Harris*, 489 U.S. 378, 388-89 (1989). "[A] municipality can be sued under § 1983, but it

10   cannot be held liable unless a municipal policy or custom caused the constitutional injury."

11   *Leatherman v. Tarrant Ct.y Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166

12   (1963); *see also Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).

13   If it is found a constitutional violation occurred, a plaintiff is entitled to nominal damages.

14   *Schneider v. Cnty. Of San Diego*, 285 F.3d 784, 794-95 (9th Cir. 2001);  *Floyd v. Laws*, 929

15   F.2d 1390, 1401 (9th Cir. 1991).

16           a.    *Plaintiff Was Not Deprived of a Constitutional Right*

17           Removing Spears from the premises prohibited Spears from protesting the day of the

18   incident; however, Spears' First Amendment rights were not violated because at the time of

19   the event the official documents and the property owner's allegations both indicated the

20   property was private.[1] At the time of Spears' removal, the Defendants did not know or have

21

22           [1]The Court is unaware of any Supreme Court or Ninth Circuit case law regarding

23   whether a constitutional violation occurs when an officer removes an individual from
     property when he reasonably believes based on information provided at the time of the

24   incident that an individual is trespassing. However, the Fifth, Sixth, and Seventh Circuits
     have concluded that if an officer has probable cause to arrest for trespassing at the time of

25   the incident, a constitutional violation has not occurred. The removal is constitutional despite

26   the alleged trespasser's claims of public property, and subsequent information revealing the
     property was public. *Skovgard v. Pedro*, 448 Fed. Appx. 538, 546-47 (6th Cir. 2011); *see*

27   *Kelly v. Myler*, 149 F.3d 641, 649 (7th Cir. 1998); *see also Bodzin v. City of Dallas*, 768 F.2d

28   722, 726 (5th Cir. 1985).

reason to know of either the Roadway Use Permit, the annotated plat, or the TMC survey. The property along Wyatt Dr. and Farness Dr. have subsequently been found to be public property. As a result of the additional information, the City now acknowledges that Spears has a First Amendment right to practice free speech on the sidewalks. This new information, however, does not retroactively make the initial enforcement of trespass law unconstitutional. Officer Burnett had sufficient reason to believe the property was private and Spears could lawfully be removed from the property for trespassing.

b.   *The City's Policy was Not the Cause of the Constitutional Violation*

An officer who has sufficient cause to believe a property is private has no duty to investigate further into the boundaries of the property. A one-time removal of an individual for a reasonably supported trespass violation subsequently found to be incorrect does not establish a policy which violates constitutional rights. "Once he has probable cause, an officer is not ordinarily required to continue to investigate or seek further corroboration." *Ewing v. City of Stockton*, 588 F.3d 1218, 1227 (9th Cir. 2009); *see Ramirez v. City of Buena Park*, 560 F.3d at 1024. "Liability for improper custom may not be predicated on isolated or sporadic incidents, it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1995) (citing *Bennett v. City of Slidell*, 721 F.2d 762, 767 (5th Cir. 1984)); *see, e.g.*, *Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988) (one arrest does not establish policy). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Monell*, 436 U.S. at 691 (1978). "A 'practice' or 'custom' can be established by repeated constitutional violations that were not properly investigated and for which the violators were not disciplined, reprimanded or punished." Ninth Cir. Model Civil Jury Instructions 9.4; *see Hunter v. Cty. of Sacramento*, 652 F.3d 1255, 1233 (9th Cir. 2011); *see also Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001). For liability, the plaintiff must show that the policy was the cause of the constitutional violation. *Trevino,* 99 F.3d at 918.

Officers do not need to pursue further justification for enforcing trespass law on a sidewalk beyond an allegation by a property owner and reasonable information the property was private. In *Bodzin v. City of Dallas*, the plaintiff was protesting on a sidewalk and grassy area adjoining a parking lot of a shopping center. 768 F.2d 722, 724-25 (5th Cir. 1985). The manager of the shopping center called police and told an officer the plaintiff was on private property. *Id.* at 723. The plaintiff argued that he was protesting on public property, however, the officer arrested the plaintiff on criminal trespass. *Id.* A survey performed during trial revealed the city plat was in error and the plaintiff was entirely on a public right-of-way. *Id.* at 724.  The court found that officers had no obligation to ascertain the property line from official sources in order to have reason to arrest the defendant for trespass. *Id.* at 726. It stated:

> Certainly we cannot expect our police officials to carry surveying equipment and the Decennial Digest on patrol; they cannot be held to a title-searchers' knowledge of metes and bounds or a legal scholar's expertise in constitutional law.

768 F.2d at 725 (quoting *Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir. 1982). The court dismissed the plaintiff's claim for damages. *Id.* at 726. Under similar facts, both the Sixth and Seventh circuits concurred with the Fifth Circuit's finding, that officers are not required to investigate into boundary lines when they have reasonably reliable information indicating the individuals in question are trespassing. *See Skovgard v. Pedro*, 448 F.App'x. 538, 546 (6th Cir. 2011) (Officer cannot be held liable for failure to investigate without a showing of deliberate indifference); *see Kelley v. Myler*, 149 F.3d 641, 646-7 (7th Cir. 1998) (If officer has cause on every element no further inquiry necessary to determine suspect's innocence).

Villaseñor declared the City and TPD's policy is as follows: "[The] City of Tucson and TPD have a longstanding policy of enforcing State trespass laws where a trespass claim is reasonably substantiated. . . . When confronted with a claim that activity is occurring on private property, TPD officers are expected to make a reasonable, independent determination based upon reasonably available information. However, an officer responding to a property owner's trespass claim cannot and should not be expected to conduct a title search or other legal or record search to explore and resolve any possible conflicting property rights claims."

1    (Declaration of Roberto Villaseñor, ¶ 6, 7).[2]

2          At the time of the incident, Defendants had cause to believe Spears was trespassing

3    and no further inquiry was required to enforce the state's trespass law. Officer Burnett was

4    placed in a similar situation to the officer in *Bodzin*. Like *Bodzin,* Burnett was called to the

5    scene by a property owner alleging the Plaintiff was on private property and desired to have

6    him removed. Plaintiffs in both cases alleged they were on public land and had a

7    constitutional right to free speech. In the present case, Burnett also had recorded

8    documentation that the property was private. Burnett had more evidence of trespass than

9    evidenced in *Bodzin*, and was not required to investigate further into the nature of the

10   property.

11         The established policy is not a custom which violates constitutional rights. Removal

12   of Spears was a one-time incident and does not mean the policy itself is improper. Burnett's

13   actions were simply based on facts available him at the time of the incident. The exact same

14   policy, applied to the facts now known, would have an entirely different effect. Defendants

15   have no need to amend the policy when applied to the new facts to protect Spears'

16   constitutional rights. After receiving the survey and Road Use Permit, Defendants now admit

17   that the sidewalks of Wyatt Dr. and Farness Dr. will be treated as public and Spears has the

18   right to protest there. Spears' removal occurred once because of an error, but this does not

19   establish that the City's policy itself repeatedly causes constitutional violations.

20         Finally, Burnett went above and beyond TPD and the City's policy. Based on the

21   City's policy enforcing trespass law, Burnett reasonably removed Spears from the premises.

22   _____

23         [2]Spears argues that Defendants should have considered whether the sidewalk was a
24   public forum and should have consulted the annotated plat and Roadway Use Permit before
     removing Spears for trespass.  There is no basis to conclude, however, that the City has an
25   obligation after reasonably concluding a property is private, to conduct such in depth
     constitutional analysis of forum or be required to discover all recorded documents prior to
26   enforcing trespass law. *See* discussion *infra* pp.14-18.  Spears also attempts to assert Defendant's
     policy towards the Park as private property caused the violation. The  Defendants have declared
27   there is no specific policy for the Park, and this appears to be nothing more than an attempt to
28   apply the facts of this case to the policy as stated by Villaseñor.

1    Burnett did not have a duty to investigate further into Spears' claim the sidewalk was public

2    property. Yet, Burnett did investigate further, he requested and was provided documentation

3    by the TMC Director of Security indicating the sidewalk was private. TPD confirmed that

4    the City's Streets and Transportation Department had recorded documentation that the

5    sidewalk was private. Defendants used reasonable efforts to confirm the sidewalk was

6    private. Like *Bodzin*, this Court cannot expect officers to perform the job of surveyors. The

7    result was an isolated event and does not establish a policy which violates constitutional

8    rights. Defendants actions surpassed the policy, and the policy alone encompasses all that is

9    required for officers to lawfully arrest for criminal trespass. The City's policy was not the

10   cause of a constitutional injury.

11          c.      *Defendants' Actions Did Not Constitute Deliberate Indifference*

12          Defendants' conclusion that the sidewalk on Wyatt Dr. was private and the act of

13   removing Spears from the property did not constitute deliberate indifference. Deliberate

14   indifference to an individual's constitutional rights occurs "when the need for more or

15   different action, 'is so obvious, and the inadequacy [of the current procedure] so likely to

16   result in the violation of constitutional rights, that the policymakers can reasonably be said

17   to have been deliberately indifferent to the need.'" *Oviatt*, 954 F.2d at 1477 (quoting *City of*

18   *Canton v. Harris*, 489 U.S. 378, 390 (1989)).

19          Spears argues that Defendants should have considered whether the sidewalk was a

20   public forum and should have consulted the annotated plat and Roadway Use Permit before

21   removing Spears for trespass. The Ninth Circuit has stated:

22          Our circuit has emphasized the following three factors in considering whether an area
             constitutes a traditional public forum: (1) the actual use and purposes of the property,
23           particularly status as a public thoroughfare and availability of free access to the area
             . . . (2) the area's physical characteristics, including the location and existence of clear
24           boundaries delimiting the area, . . . and (3) traditional or historic use of both the
             property in question and other similar properties.
25
     *ACLU v. City of Las Vegas*, 333 F.3d 1092, 1100 (9th Cir. 2003) (internal citation omitted).
26
            Spears argues officers should have discerned the Park sidewalk was a public forum
27
     and treated him accordingly. However, both cases quoted by Spears are distinguishable from
28

                                                  - 14 -

1   the present case. First, in *Venetian Casino Resort, L.L.C. v. Local Joint Executive Bd. of Las*

2   *Vegas*, the resort entered into an agreement with the Nevada Department of Transportation.

3   257 F.3d 937, 939 (9th Cir. 2001). In the agreement, the resort could remove the public

4   sidewalk and replace it with another lane for traffic. *Id.* In return, the Venetian created a

5   sidewalk on its private property to replace the one removed. *Id.* The new sidewalk connected

6   to the public sidewalk on both ends. *Id.* at 943. Under the agreement, the sidewalk would be

7   maintained by the Venetian specifically for unobstructed public access at all times. *Id.* at 942.

8   The court found that the Venetian sidewalk was a public forum because the original sidewalk

9   was historically public, the current sidewalk was dedicated for public use, and the private

10  sidewalk connected seamlessly with the city's public sidewalk. *Id.* at 948. As a result,

11  officers could not prohibit individuals from protesting on the sidewalk. *Id.* at 948.

12          *Venetian* does not control here. Unlike *Venetian*, the Medical Park property was not

13  originally public. In addition, the City did not have a contract with the TMC. Because there

14  was no agreement between the private property owner and the City, Defendants were not on

15  notice of the public nature of the sidewalk.

16          The Roadway Use Permit also did not provide adequate notice to Defendants, nor was

17  it available at the time of the incident. The Permit was not referenced in any of the Pima

18  County Recorder's land plats. Four recorded plats indicate the property is private and make

19  no mention of an easement on Wyatt or Farness.  The Roadway Use Permit identifies the

20  roads but specifies the easement was limited to the areas described in attached

21  documentation. These descriptions are highly technical and did not provide adequate notice

22  to officers, who should not be required to translate language intended for professional

23  surveyors. In fact, even after being notified of the Roadway Use Permit, TMC found it

24  necessary to hire surveyors to determine the scope of the easement. Even if the officers had

25  access to the Roadway Use Permit at the time of the incident, it may still have been

26  reasonable to assume the property was private based on the land plats, the information from

27  the City's Streets and Transportation Department, and the assertion of the security staff.

28          In addition, the roadways and sidewalks of the medical park are not seamlessly

connected to the City maintained roadways. Both Wyatt Dr. and Farness Dr. are at right angles to the public sidewalks on Grant and Rosemont. Both roads are inlet roads which connect only at one end to the public sidewalk and terminate in the interior of the Medical Park. (Pl. Notice, Ex. S).

The second case relied upon by Spears, *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, is also distinguishable. 333 F.3d 1092 (9th Cir. 2003). In *ACLU*, the City of Las Vegas contracted with a private entity to transform several blocks of publicly owned property downtown into a pedestrian mall. *Id.* at 1094. The court considered the sidewalk to be a traditional public forum under the three part analysis. *Id.* at 1109. First, the primary purpose of the sidewalk was to be a public thoroughfare. *Id.* at 1095. Second, part of the contract with the city required the street remain open to pedestrians at all times. *Id.* at 1102. Third, traffic was allowed to cross the street at two points by public streets. *Id.* Fourth, the location encouraged the public to cut through its streets to other locations. *Id.* at 1103. Finally, the mall was always public property and had never been owned privately. *Id.* at 1095.

Unlike *ACLU*, the sidewalks within Tucson Medical Park were originally privately owned, albeit subsequently designated for public use through the Roadway Use Permit. The later designation for public roadway use, however, did not clearly define the streets and sidewalks within as public forums. *ACLU* is distinguishable because it fails to include facts where officers had official plats as well as confirmation from multiple sources designating the sidewalk as private.   The primary purpose of Wyatt Dr. and Farness Dr. are for access to the private medical offices within Tucson Medical Park. The roads do not encourage the public to cut through; neither Wyatt nor Farness connect at both ends to public streets, but instead terminate within the park. (Pl. Notice, Ex. S). In addition, TMC has no contract with the City committing it to designate the land strictly for public use or as a public thoroughfare. TMC has only a Roadway Use Permit which also designates access to the roads for employees, invitees, and the public. This Permit was not connected or referred to in any of the land plats.

1    Given these differences, Burnett's need for more or different action was not so

2  obvious as to make his removal of Spears deliberately indifferent to Spears' First

3  Amendment rights.   Defendants, given the facts available at the incident, reasonably

4  concluded the sidewalk was not a public forum permitting free exercise of expression.

5  Defendants made immediate efforts to confirm the sidewalk was private. Defendants relied

6  upon recorded plat information indicating the property was private. First, TMC security

7  supervisor Loeffler said Wyatt Dr. and the sidewalk were private and were not maintained

8  by the City. Then, Burnett asked TMC to produce documentation stating Wyatt Dr. was

9  private. Accordingly, Director of Security Bill Fleming provided Pima County Assessor's

10  Office Records indicating it was private. Officer Burnett then contacted TPD who confirmed

11  with the City's Streets and Transportation Department that the area was private.

12    In addition, Defendants cannot be expected to know of documents not officially filed

13  with the city. Arizona property law states  notice of a property instrument is given when the

14  document is properly recorded. The applicable statute states, "The record of a grant, deed or

15  instrument in writing authorized or required to be recorded, which has been duly

16  acknowledged and recorded in the proper county, shall be notice to all persons of the

17  existence of such grant, deed or instrument." Ariz. Rev. Stat. Ann. § 33-416 (2015). The

18  annotated plat was not officially recorded and therefore did not provide adequate notice to

19  the City of the change of status of the sidewalk. Defendants should not have known or had

20  reason to know of TMC's dedication of Wyatt Dr. for public use nor of the annotated plat

21  because neither was referenced in the official plat. To require the Defendants to obtain

22  unofficial documents and evaluate the status of the forum in order to determine whether a

23  property is private before enforcing trespass laws would create an unreasonable standard for

24  police officers. In essence, as in *Bodzin*, the Court would be requiring police officials to

25  become surveyors, title-searchers, and constitutional experts. The Court will not impose this

26  level of burden on officers before permitting them to resolve trespass disagreements.

27    Defendants' investigation into the status of the property was quite thorough, and did

28  not constitute deliberate indifference.

1

2        d.    *Policy As Moving Force*

       Because there is no constitutional violation, the City's privacy policy is valid, and

3    there was no deliberate indifference, the Court need not address whether the policy was the

4    moving force behind a violation.

       Spears has failed to prove through a preponderance of the evidence that Defendants'

5    enforcement of the City's trespass policy deprived Spears of his constitutional First

6    Amendment rights. Having failed to establish municipal liability for failing to act to preserve

7    constitutional rights, Spears is not entitled to nominal damages.

8

9

10          Accordingly, IT IS ORDERED,

11       1.    Plaintiff's Motion for Preliminary Injunction  (Doc. 6) is DISMISSED as

12             moot.

13       2.    Defendants' Motion  to Dismiss Case as Moot or Motion for Summary

14             Judgment (Doc. 29) is GRANTED.

15       3.    The Clerk of the Court shall enter judgment and shall then close the file in this

16             matter.

17       DATED this 26th day of August, 2015.

18

19

20                                    Cindy K. Jorgenson
                                 United States District Judge

21

22

23

24

25

26

27

28